J. E. NOYES, Appellant, v. W. H. CRAWFORD, *et al*, Appellees.

Specific Performance: CONVEYANCE PENDING SUIT. During the pendancy of a suit for specific performance, neither party to the litigation can alienate the property in dispute, so as to affect the rights of his opponent under Code, section 3543.

Same: SUBSEQUENT PURCHASER: WHO AFFECTED BY SUIT. A suit for specific performance of a contract to convey real estate, does not affect a subsequent good faith purchaser with notice of plaintiff's claim, who is not a party to the suit. A *lis pendens* is not equivalent to a recorded deed.

*Appeal from Buena Vista District Court.*—HON. W. B. QUARTON, Judge.

THURSDAY, OCTOBER 9, 1902.

ACTION in equity to enforce specific performance of contract to convey land. The district court dismissed the petition, and plaintiff appeals.—*Affirmed.*

*F. F. Faville* and *T. D. Higgs* for appellant.

*Mack & De Land* for appellees.

WEAVER, J.—On February 19, 1900, the defendant W. H. Crawford was the owner of the half section of land in controversy, and on that date made a written contract to sell and convey the same to one Clemens. On the same day Clemens assigned the contract to plaintiff. Crawford was a married man, living upon the land, but his wife did not join in the contract. On February 22, 1900, Crawford having refused to convey, this action was instituted ·by filing petition for specific performance and by serving notice upon some of the defendants. On the 21st day of February, Crawford and wife conveyed the land by deed to one Sisson, and on the same day Sisson and wife conveyed it to one Bartholow, who in turn, on the 17th of April, 1900, conveyed to Frank K. Robeson. The deeds from Crawford to Sisson, and from Sisson to Bartholow were filed for record March 6, 1900, and the deed from Bartholow to Robeson April 20, 1900. In the original petition W. H. Crawford was alone made defendant. On September 1, 1900, an amendment was filed to the petition, naming Sisson, Bartholow, and Robeson as additional defendants, alleging that they took title to the land with notice of plaintiff's rights. No notice has ever been served upon Bartholow, and· he does not appear. The wife of Crawford has never been made a party. The defendant Robeson denies the claim made by plaintiff, alleges that he obtained the title to the land in good faith, and without notice of any right in the plaintiff, and sets out the various conveyances through which the title has passed from Crawford to himself. He also alleges that Crawford's wife had an inchoate dower right as well as a homestead in the land; that she did not join in the contract to Clemens, and has never been made a party to the suit. By a separate answer Sisson alleges that he purchased and took conveyance of the land of the 21st of February, in good faith, and for a valuable consideration, and

thereafter; and before being made a party to the suit, sold and conveyed the same to Bartholow.    Crawford also answers, setting up the same matters alleged in the answers of Robeson and Sisson, and further says, while admitting having made the contract sued upon, that the same was wholly without consideration.    By way of reply, plaintiff states that, if the wife of Crawford has any interest in the land, or if they have any homestead rights therein, he is willing to take the title subject to such rights and incumbrances, with such reduction or reservation from the purchase price as shall be found equitable.

I. The evidence develops the fact that this is one of the controversies not infrequently arising out of rivalry existing between real estate agents.    Crawford, it seems, had listed his land for sale with Sisson, and evidently, also, had some dealings of the same nature with Clemens.    On February 20th, Sisson, learning of the contract with Clemens, called Crawford to his office, and told him that some days prior to the 19th of said month he had negotiated a sale of the land to Bartholow, and would expect him to make conveyance accordingly.    In response to Crawford's statement that he had already contracted with Clemens, Sisson claimed to have the exclusive agency for the sale of the land, and insisted that the sale to Bartholow be carried out.    This interview was the inception of negotiations which culminated in the conveyance to Sisson on the folloing day, and the almost immediate conveyance by Sisson to Bartholow.    The deed from Crawford to Sisson was undoubtedly passed before the beginning of the suit now before us, and the deeds from Sisson to Bartholow and from Bartholow to Robeson were also executed and delivered before either of these three persons was made a defendant. Were this litigation between plaintiff and Sisson alone, its solution would not be difficult, for undoubtedly the latter purchased with full knowledge of plaintiff's contract, and

he acquired no other or better right than Crawford himself had in the premises. But when Bartholow took the title his grantor was not a party to the suit, and held by a title antedating the commencement of such suit. The same is true of the conveyance to Robeson. We are thus brought to the inquiry whether Robeson was, as a matter of law,

1. SPECIFIC performance: conveyance pending suit. chargeable with notice of the pendency of this suit at the time he received the conveyance from Bartholow. While there may be room for suspicion that the several conveyances were all parts of a plan to defeat the sale to plaintiff, there is no evidence on which we can find such to be the fact, except as to the deed from Crawford to Sisson. It is also shown without contradiction that each conveyance was made for a valuable consideration. Our statute upon the subject of *lis pendens* reads as follows: "When a petition has been filed affecting real estate, the action is pending so as to charge third persons with notice of its pendency, and while pending, no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's rights, if the real property affected be situated in the county where the petition is filed." Code, section 3543. As interpreted by this court, this section "applies only in cases when pending the action, a third person deals with reference to the subject-matter with a party to the action." *Sprague v. White*, 73 Iowa, 674; *Parsons v. Hoyt*, 24 Iowa, 154; *Semple v. McCrary*, 46 Iowa, 37; *Baily v. McGregor*, 46 Iowa, 667; *Joseph v. McGill*, 52 Iowa, 127. This is also the uniform holding in other states. *Green v. Rick*, (Pa.) 15 Atl. Rep. 497 (2 L. R. A. 48, 6 Am. St. Rep. 760); *Stuyvesant v. Hone*, 1 Sandf. Ch. 419; *Parks v. Jackson*, 11 Wend. 442 (25 Am. Dec. 656); *Becker v. Howard*, 4 Hun, 361; *Gibler v. Trimble*, 14 Ohio, 323; *Clarkson v. Morgan's Devisees*, 6 B. Mon. 441; *Fogarty v. Sparks*, 22 Cal. 142; *Irvin's Lessee v. Smith*, 17 Ohio, 226; *Hunt v. Haven*, 52 N. H. 172; *French v. Loyal Co.*, 5 Leigh, 627. Mr.

Pomeroy states the rule very briefly and very clearly, as follows: "During the pendency of a suit neither party to the litigation can alienate the property in dispute so as to affect the rights of his opponent." 2 Pomeroy, Equity Jurisprudene, section 633. "A person whose interest existed at the commencement of the suit is a necessary party, and will not be bound by the proceedings unless he be made a party to the suit." *Arnold v. Smith,* 80 Ind. 422; *Haughwout v. Murphy,* 22 N. J. Eq. 531; *Ensworth v. Lambert,* 4 Johns. Ch. 605. "*Lis pendens* has no application to a third person, whose interest existed before the suit was commenced, and who might have been an original party." Bigelow, Frauds, 301. See, also, Wade, Notice, 350, 369. Indeed, we think it would be hard to find any authority to sustain the contrary proposition. The cases cited by counsel for appellant from our own reports fall far short of holding that the grantee of the land is bound by a suit begun against his grantor after the conveyance under which he claims title. *Haverly v. Alcott,* 57 Iowa, 171, upon which much reliance seems to be placed, is not in point. In that case Alcott conveyed the land after suit had been begun against him, and, under the rule which we have stated, his grantee, and all claiming through such grantee, were bound by such adjudication, under the doctrine of *lis pendens.* The controversy there turned upon the question whether the failure of the clerk to properly index the case in the appearance docket relieved the purchaser from the effect of the *lis pendens,* and it was held that the filing of the petition constituted a sufficient compliance with the law, and the error in indexing the case was immaterial. In other words, the court there held, not that a person who purchases land is bound by a suit thereafter begun against his grantor, and to which he himself is not made a party, but that in the case then under consideration the suit was begun when the petition was filed, and therefore the intervener's purchase, subsequently

made, was *pendente lite*, and subject to the judgment rendered in such litigation. The words "*lis pendens*" ("pending suit") are self-explanatory, and until there be a suit pending there can be no such thing as a purchaser *pendente lite*. The only serious question in this connection is whether the fact that the deed from Crawford to Sisson was unrecorded at the date of the commencement of the suit has any effect to change or modify the application of the rule. An unrecorded deed is valid between the parties and as against all persons except purchasers and incumbrancers for valuable consideration and without notice. One who commences a suit against the holder of a legal title does not occupy the position of a purchaser, within the meaning of the recording act. Neither is *lis pendens* the equivalent of registration under such act. Registration of an instrument admissible to record is notice thereof to the entire world, but *lis pendens*, as we have seen, is notice to those only who attempt to acquire some interest in the subject-matter of a litigation after suit is begun, and from a party thereto. Indeed, many authorities hold that *lis pendens* is not primarily a rule of notice at all, but of public policy. *Murray v. Lylburn*, 2 Johns. Ch. 441; *Haughwout v. Murphy*, 22 N. J. Eq. 544; *Walden v. Bodley*, 50 U. S. 49 (13 L. Ed. 36); *Bellamy v. Sabine*, 1 De Gex & J. 566; *Lamont v. Cheshire*, 65 N. Y. 37; *Eyster v. Gaff*, 91 U. S. 521 (23 L. Ed. 403). In the *Bellamy Case, supra*, it is said that *lis pendens* affects the purchaser, "not because it amounts to notice, but because the law does not allow litigant parties to give to others, pending the litigation, rights to the property in dispute. * * * The necessities of mankind require that the decision of the court shall be binding not only on the litigant parties, but also on those who derive title under them by alienation made pending the suit, whether such alienees had or had not notice of the pending proceedings." However, it is perhaps not very material whether we call the rule one of notice or of public

policy; the result is the same,—the purchaser of the subject of litigation from a party litigant after suit is begun is bound by the result of the proceedings into which he thus intrudes.   But Robeson, the present holder of the legal title to the land now in controversy, did not purchase from a party to the suit, nor were any of his grantors parties thereto at the date of the conveyances made by them.  The mere fact that these deeds were not of record when the suit was begun does not, as we view it, affect the relative rights of the parties.   The recording act is for the benefit of subsequent purchasers only (Code, section, 2925), and the term "subsequent purchasers" is used to describe purchasers claiming under a common grantor.   *Rankin v. Miller*, 43 Iowa, 11.  It does not protect mechanic's liens or judgment liens against prior unrecorded deeds.  *Fletcher v. Kelly*, 88 Iowa, 475; *Eldred v. Drake*, 43 Iowa, 569; *Munson v. Frazer*, 73 Iowa, 177.

It is true that the conflicting claims of title in this case are both traced to Crawford as a common grantor, but plaintiff does not claim to be a "subsequent purchaser."

2. SAME: subsequent purchaser: who affected by suit.

He claims to have been the prior purchaser, and, in default of the possession of a deed which he could place of record, and thus prevent a subsequent valid sale by his grantor, he undertook, by instituting this action, to create a *lis pendens*, which would have the same effect.  He delayed such action for three days, and meanwhile the title was diverted into the line under which Robeson claims.   The suit, when begun, was against Crawford alone, and hence, as we have seen, did not operate to give notice to or bind the purchaser who had already taken title from Crawford, and the grantees of such purchaser took title without being affected by the statute of *lis pendens*.  The plaintiff does not testify or attempt to show that he examined the records before beginning suit, or that he was in any manner misled by such records, and, indeed, does not make any claim

in testimony that he was ignorant of the conveyance by Crawford. That he does not seem to have thought the grantees of Crawford necessary parties is indicated by his failure to implead them until several months after their deeds were placed of record showing the Robeson title to have been derived from Crawford before the suit was begun. The authorities are not in harmony as to the effect of an unrecorded conveyance by the defendant in actions of this kind, but we think the rule as stated by Mr. Freeman has the strongest support: "If a suit is brought by A against B to quiet title to land, or to recover possession thereof after B has conveyed to C, the latter cannot be bound by the judgment when he is not a party to the action, because neither A nor any of his grantees can be regarded as purchasers under B or C, who are the parties to the unrecorded conveyance." 1 Freeman, Judgments, section 201. "Generally, the statute authorizing a registration of writings does not make them void while unregistered, but merely protects from their operation innocent purchasers from the parties thereto, or some of them. If a suit results in a sale of the property, so that some one becomes an innocent purchaser thereunder, he is, doubtless, protected from an unrecorded writing of which he has no actual or constructive notice; but unless and until some one becomes such purchaser, one who has a title which antedates the suit, but is not of record, is not bound by the *lis pendens.*" Id. This principle is recognized and followed by many cases, among which we may cite in point: *Smith v. Williams*, 44 Mich. 240; *Walker v. Goldsmith* (Or.) 12 Pac. Rep. 537; *Irvin's Lessee v. Smith*, 17 Ohio, 226; *Davenport v. Turpin*, 41 Cal. 100; *Hammond v. Paxton*, 58 Mich. 393 (25 N. W. Rep. 321). Most of the cases which seem to be inconsistent with the doctrine here followed will be found upon examination to have been controlled by the terms of the local registration statutes. *Leonard v. Bay Co.*, 28 N. J. Eq. 192. It is true that in

*Mitchell v. Peters*, 18 Iowa, 119, decided by this court in 1864, the writer of the opinion speaks of the rule here approved as something which "may well be questioned, "but does not undertake to decide or discuss it; the decision there having been reached upon the undisputed testimony that defendant took the title asserted by him with express notice of plaintiff's rights.    We therefore hold that, as defendant Crawford had devested himself of the title to the land before suit was begun against him, and as such title had passed by successive conveyances to the defendant Robeson, for valuable consideration, and without notice, before any of the said grantees were made parties to the litigation, the relief asked by plaintiff was properly denied by the district court.    This conclusion renders it unnecessary to consider or decide other questions discussed by counsel.

The decree of the district court is AFFIRMED.